# EXHIBIT A

D.C. Courts Home

# Court Cases Online

Case Search for: 2014 CA 7013

Click here to view search criteria

Search retrieved 1 case in less than a second.

Selected 1 cases to view

Click here to view search results

Viewing single case; Details retrieved in less than a second.

Click here to view case summary

| 2014 CA 007013 B: BROWN, TARENCE Vs. ARAMARK | |
|---|---|
| Case Type: Civil II | File Date: 11/04/2014 |
| Status: Open | Status Date: 11/04/2014 |
| Disposition: Undisposed | Disposition Date: |

| Party Name | Party Alias(es) | Party Type | Attorney(s) |
|---|---|---|---|
| BROWN, TARENCE | | PLAINTIFF | DHALI, ARINDERJIT |
| ARAMARK | | Defendant | |

| Schedule Date | Schedule Time | Description |
|---|---|---|
| 02/06/2015 | 09:30 AM | Initial Scheduling Conference-60 |

| Docket Date | Description | Messages |
|---|---|---|
| 11/05/2014 | Service Issued | Issue Date: 11/05/2014<br>Service: Summons Issued<br>Method: Service Issued<br>Cost Per: $<br><br>ARAMARK<br>601 F. Street, NW<br>WASHINGTON, DC 20001<br>Tracking No: 5000152543 |
| 11/04/2014 | Event Scheduled | Event Scheduled<br>Event: Initial Scheduling Conference-60<br>Date: 02/06/2015 Time: 9:30 am<br>Judge: HOLEMAN, BRIAN F Location: Courtroom 214 |
| 11/04/2014 | Complaint for Breach of Contract Filed | Complaint for Breach of Contract Filed<br>Attorney: DHALI, ARINDERJIT (495909)<br>TARENCE BROWN (PLAINTIFF); Receipt: 295097 Date: 11/04/2014 |

| Receipt # | Date | From | Payments | | Fee | | Amount Paid |
|---|---|---|---|---|---|---|---|
| 295097 | 11/04/2014 | DHALI, ARINDERJIT | Cc | $120.00 | Cost | $120.00 | $120.00 |



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

TARENCE BROWN
    Vs.
ARAMARK

C.A. No.    2014 CA 007013 B

## INITIAL ORDER AND ADDENDUM

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

    (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

    (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

    (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

    (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

    (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                     Chief Judge Lee F. Satterfield

Case Assigned to:  Judge BRIAN F HOLEMAN
Date:   November 5, 2014
Initial Conference: 9:30 am, Friday, February 06, 2015
Location:  Courtroom 214
           500 Indiana Avenue N.W.
           WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**500 Indiana Avenue, N.W., Suite 5000**
Washington, D.C. 20001 Telephone: (202) 879-1133

Tarence Brown

1203 S. Washington Street,    Plaintiff
Alexandria, VA 22314

vs.

**14 - 0 0 0 7 0 1 3**

Case Number _____

Aramark

601 F. Street. NW,    Defendant
Washington D. C. 20001

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

A.J. Ohali
Name of Plaintiff's Attorney

Ohali PLLC. 1629 K. Street.
Address
Suite 300. Washington D. C. 20006

203 - 551-1285
Telephone

*Clerk of the Court*

By Adrienne J. Noel

Deputy Clerk

Date 11/14/2014

如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화하십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-682-2700) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

FORM SUMMONS - Jan. 2011                                                CASUM.doc

RECEIVED AND RETURNED
Civil Clerk's Office

NOV 0 4 2014

Superior Court of the
District of Columbia
Washington, D.C.

### SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
#### Civil Division

| | |
|---|---|
| Tarence Brown | )   **Case No.:** **14 - 0 0 0 7 0 1 3** |
| 1202 S. Washington Street. | ) |
| Alexandria, VA 22314 | )   **CIVIL COMPLAINT** |
|      Plaintiff, | ) |
| | )   **For Violations of:** |
|        **vs.** | )      **(1) D.C. Human Rights Act;** |
| | )      **(2) Equal Pay Act** |
| ARAMARK. | ) |
| 601 F. Street. NW. | )         <u>**Jury Demand**</u> |
| Washington D.C. 20001 | ) |
|      Defendant. | ) |
| | ) |

### <u>Plaintiff's Introduction</u>

Tarence Brown is a 48 year old African American male. He was employed with Aramark from 2000 to November 6, 2013. A day before or on November 5, 2013, he had called the Aramark hotline to file a complaint for sex and age discrimination. Twenty-four (24) hours later or on November 6, 2013 he was terminated.

In late 2011, Aramark obtained the facilities services contract for the Verizon Center, to maintain the facility before and after the end of sporting, music and other public events. In October 2011, Tarence was promoted to the Night Operations Manager for the Verizon Center. Aramark also retained the services of the prior employees under this contract, in this case, the employees of "Eagle Maintenance" to work on their facilities contract at the Verizon Center.

The female employees of Eagle Maintenance (who were now all Aramark employees) in particular the Day Shift Supervisor Ms. Gloria Barnes, began providing gifts to Tarences' supervisor and General Manager (GM) Mr. Ivan Donoso. In exchange for accepting these gifts, Mr. Donoso promoted Ms. Barnes to the "Day Operations Manager" and also allowed Ms.

Barnes to undermine Tarences' authority. Consequently, Tarence made a complaint of sex discrimination and bias with his supervisor Mr. Donoso.

In September 2013, when for the 3rd time Tarence raised the issue of sex based discrimination and favoritism with his supervisor and GM Mr. Ivan Donoso, Mr. Donoso said:

> *"Lets say you are right, infact I am going to say that you are correct. But look at this. For one you have two major facts against you. 1st of all you are working with two women, and even though they are related they are infact women. Second, you have a HR [Human Resources] Manager Ms. Dakara Barnes who is a manager and her boss, Ms. Remey Taylor, who is also a women. When you have all these women working and with sexual harassment and discrimination laws, I need to be extremely careful about what I say because I had an experience at the convention center regarding sexual harassment of a female employee, and believe me that sexual harassment is some serious stuff, and I don't want to go through it again."*

Consequently, the discriminatory behavior at the workplace continued unabated.

Sometime during October 27, 2013 and November 1, 2013, Tarence had a conversation with HR Manager Ms. Dakara Barnes and again complained about sex based discrimination at the workplace, which among *inter alia* included the over-scrutinization of his work duties and his lower salary in comparison to Ms. Gloria Barnes. Ms. Dakara Barnes rather than investigating this matter, suggested that he leave his employment by saying, *"...some people regardless of how they work, don't fit in with the relationship that occur, and choose to leave based on not fitting in."*

Around this time, Tarence received a congratulatory letter from the Chief Executive Officer (CEO) of Aramark Mr. Eric Foss on his 10 year work anniversary with them, and that he was a "role model for other employees" and that Aramark wished him "continued success in the years ahead."[1]

---

[1] A month later Aramark would celebrate his anniversary by terminating him.

On November 5, 2013 Tarence contacted the Aramark employee hotline and advised them of the sex and age discrimination associated with Aramark, the sexual favoritism exhibited in the workplace, and his lower salary in comparison to Ms. Gloria Barnes.

On November 6, 2013, at about 1:30 pm, he was terminated, and provided a severance package for 20 weeks of wages, plus a waiver of all of his Title VII and other employment law and civil rights. He refused to sign this agreement. Also when contesting his unemployment claim, Aramark alleged that he was terminated for cause. Per the terms of the Aramark handbook, an employee who is terminated for cause cannot be offered a severance. His unemployment claim was eventually approved.

Consequently under Rules 3 and 8 of the Superior Court Rules of Civil Procedure, Tarence by and through his undersigned counsel Dhali PLLC, now file this action for violations of the various civil rights and employment laws, and state as follows:

### Part I. Parties

1.  Tarence Brown is an African American male age 48. For about thirteen (13) years he was employed with Aramark until the day of his termination on November 6, 2013. At the time of his termination he was earning $40,000 per year. He was the Night Operations Manager for Aramark at the Verizon Center, located in Washington D.C. At all times during his employment he was an employee as under the D.C. Human Rights Act D.C. Code § 2-1401.02 (9); and 29 U.S.C § 203 (e)(2)(ii),  of the Equal Pay Act.

2.  Armark is a national company with offices throughout the country and more than 500 employees engaged in the business of facilities management. To that end, they operated a facilities services contract worth millions of dollars at the Verizon Center,

Washington D.C. Aramark is an employer as under D.C. Code § 2-1401.02 (9), and 29 U.S.C § 203 (d).

## Part II. Jurisdiction

3. This Court has subject matter jurisdiction under D.C. Code Ann. § 11-921, and 29 U.S.C § 216 (b), for the Equal Pay Act (EPA).

4. This Court has personal jurisdiction over the defendant's pursuant to D.C. Code Ann § 13-422/13-423.

5. Venue is proper in Washington D.C., because Tarence worked in the District for Aramark, and also all the allegations occurred in the District.

## Part III. Exhaustion of Administrative Remedies

6. On August 21, 2014, Plaintiff filed his charge with the Equal Employment Opportunity Commission (EEOC) alleging violations of Title VII for race, sex and age discrimination plus retaliation, EEOC Case No. 570-2014-01917. The charge was also cross filed with the D.C. Office of Human Rights. (OHR).

7. On this same day, for reasons unknown, the EEOC unilaterally issued a Right to Sue. It was received by the Plaintiff by U.S. mail on August 29, 2014

8. On October 10, 2014 we sent a facsimile to the OHR requesting the withdrawal of our DCHRA charge.

9. There are no administrative exhaustion requirements as under the Equal Pay Act (EPA).

10. Plaintiff has no further administrative obligations.

## Part IV. Facts

11. In 2000, Tarence began his employment with Aramark. He was employed as a janitor. He continued to be promoted throughout the years and when in late fall 2011, Aramark was awarded the facilities service contract for Verizon Center, Tarence was made the Night Operations Manager, for Aramark's facilities service contract at the Verizon Center, Washington D.C.

12. As part of this contract, Aramark absorbed the employees of the prior contractor, Eagle Maintenance.

13. Moving forward, all Eagle Maintenance employees were Aramark employees working at the Verizon Center on its facilities service contract.

14. The facilities service contract required Aramark employees to maintain the Verizon Center before and after the conclusion of sporting, music and other public events.

15. Tarence reported to Mr. Ivan Donoso, the Facilities GM, and Mr. Dave Korol, the District Manager for the region. They are both Caucasian males.

16. Ms. Gloria Barnes (a prior Eagle Maintenance employee) was the Day Shift Supervisor and she (along with her team) was responsible for the maintenance and cleaning of the "Monumental Sports & Entertainment" executive officers on the 2nd, 3rd and 4th levels of the Verizon Center.  Ms. Barnes also reported to Mr. Donoso.

17. In late 2011, or about the time that the Eagle Maintenance employees were consumed as part of Aramark employees, Ms. Barnes began to curry personal favor with the GM Mr. Donoso by providing him with sports and music memorabilia from the various events held at the Verizon Center. Mr. Donoso accepted these gifts with delight. This

practice of giving and receiving gifts would continue until the time of Tarences'

termination on November 2013.

18. In exchange for these gifts, Mr. Donoso acquiesced to Ms. Barnes' every whim and

command, to the point that he would engage in decisions effecting and detrimental to

the "terms and conditions" of Tarences' employment, such as not providing him the

adequate staff or personal in performing his duties, in comparison with Ms. Gloria

Barnes. Mr. Donoso also overly-scrutinized Terrances' job tasks and duties.

19. Consequently on April 4, 2012, after Mr. Donoso conducted a walk-thru of the

facilities, he determined that Tarence was responsible for the unkept facility, and placed

him on a 60 day Performance Improvement Plain (PIP). Tarence refused to sign the PIP

protesting that the unkept facility was a result of the lack of work performed by the

crew from the morning shift, supervised by Ms. Barnes[2].

**1st Protected Activity: Complaints about Sex & Age Discrimination**

20. In August 2012, Tarence engaged in protected activity when he emailed and verbally

informed Mr. Donoso about his favoritism towards Ms. Barnes and her younger staff,

and that he (Mr. Donoso) was being biased towards him.

21. Soonafter engaging in protected activity, Mr. Donoso stopped supporting Tarence and

his night team. When Tarance asked Mr. Donoso to accompany him for an inspection

of the premises, so Mr. Donoso may determine the efficiency and quality of

Terances' work, Mr. Donoso refused to do so; for events that were attended by

10,000 or more individuals Mr. Donoso also refused to assign Tarence with additional

staff or manpower for properly cleaning up the facility.  Additionally, when Tarence

---

[2] Tarence was the Night Operations Manager and had no control over the activities of the morning staff.

would call Mr. Donoso requesting assistance or questions on the cleaning or maintenance of the facilities, Mr. Donoso either refused to answer the calls, or alternatively, would not return the calls for any voice messages left.

22. Mr. Donoso also got frustrated with Tarences' complaints of his favoritism towards Ms. Barnes, and consequently advised Tarence to take a vacation; Tarence did so by visiting his mother in Little Rock, Arkansas.

23. In February 2013, a Monumental Sports and Entertainment employee sent a complaint to Aramark about Ms. Barnes' team not cleaning their facility/floors.

24. In March 2013, Melvin Hester (a team member or colleague of Ms. Barnes) without Tarences' permission took the vacuum belts, preventing him and his crew from working. Tarence asked him to return the belts, but Mr. Hester refused. Tarence then advised Mr. Hester to clock out, so he may do his (Tarence) job without his (Hester's) interruptions. Hester immediately called Ms. Barnes, and complained that Tarence had ordered him to clock out; Ms. Barnes arrived at the facility around 1 am and cautioned Tarence about mistreating her staff or Mr. Hester. Aramark also wrote up Tarence for this incident.

**EPA: Discriminatory Pay Practices: Ms. Gloria Barnes is Paid a Higher Annual Wage**

25. Soon after Donoso promoted Ms. Barnes to "Day Operations Manager[3]" her duties remained the same; she was however being paid $55,000 per year, or $15,000 more annually than the Plaintiff. Tarence felt the pay raise was discriminatory as he was employed by Aramark for a longer time, and Ms. Barnes also had far less responsibility, duties and experience than him. For instance, unlike Tarence, she did

---

[3] Plaintiff was the "Night Operations Manager."

not have to engage in managerial duties, in this case, schedule her staff on ABI (American Business Integrators), and infact refused to learn ABI and how to process payroll on ABI. She also refused to learn to conduct weekly safety inspections of the premises; these were responsibilities that Tarence had to engage in, and yet was being paid a lower wage that his comparator.

26. In July 2013, Tarence asked Nicholas Eglin (GM of Facilities Services for Aramark) for a raise; the raise was denied.

**2nd Protected Activity & Subsequent Retaliation**

27. In June 2013, Tarence again engaged in protected activity when he sent an email to Nicholas Elgin (Aramark GM), stating that he was filing a complaint with his office on discrimination and/or that Aramark was showing favoritism towards the female staff. Tarence was told to meet Mr. Elgin the next day; at this meeting Tarence again orally advised Aramark that they were showing favoritism towards Ms. Brown and that he was being singled out or discriminated because of his sex. Soonafter this conversation, Aramark further engaged in actions that prevented him from doing his job, in this case: ignoring him during meetings; not being timely informed of assignments, including the "pop-up" events by Monumental Sports; change in season ticket holder seating upgrades; not providing him with a full staff of employees for the cleaning of the facilities (which had an effect of him and his team running afoul of cleaning and safety regulations) – any or all of these acts had a direct effect on his ability to do his job and effectively engage in his duties.

28. In September 2013, Tarence wrote an email to all Aramark supervisors that he was unable to do his job.

29. The next day Tarence also advised Mr. Donoso and again informed him that he is

favoring Ms. Barnes and Ms. Paula Mason-Datcher (daughter-in-law of Ms. Barnes; who was responsible for payroll and office work for Aramark) over him.

### FRE 801(d)(2)(D) statement by Manager on Sex Discrimination

30. At this time Mr. Donoso said,

*"Let's say you are right, infact I am going to say that you are correct. But look at this. For one you have two major facts against you. 1st of all you are working with two women, and even though they are related [Ms. Barnes and Ms. Mason –Datcher], they are infact women. Second you have a HR Manager Ms. Dakara Barnes who is a manager and her boss, Ms. Remey Taylor, who is also a women. When you have all these women working and with sexual harassment and discrimination laws, I need to be extremely careful about what I say because I had an experience at the convention center regarding sexual harassment of a female employee, and believe me that sexual harassment is some serious stuff, and I don't want to go through it again."*

31. At which point Tarence replies, that this was about Aramark treating all employees

equally without regard to sex. To which Mr. Donoso again said,

*"It doesn't matter; they are women and they have two women in HR who will stand behind them because they are women."*

32. Tarence advised Mr. Donoso that he did nothing wrong and left his office.

33. The acts of favoritism and sexual bias continued.

### 3rd Protected Activity

34. Sometime around October 27-November 1, 2013, Tarence again spoke to the HR

Manager Ms. Dakara Barnes about discrimination and bias at the workplace and the

behavior of Mr. Donoso and Ms. Gloria Barnes towards him. Ms. Dakara Barnes

suggested that he quit his job by saying, *"that some people regardless of how well*

*they work, don't fit in with the relationships that occur and choose to leave based on*

*not fitting in."*

35. His concerns about workplace sexual bias and discrimination therefore went unaddressed.

36. On October 2013, Tarence received a letter from the Aramark CEO Mr. Eric Foss congratulating him on his 10 years of service, and that he was an *"invaluable resource and role model for other employees."*

### 4th Protected Activity and Termination 24 hours later

37. On November 5, 2013 at approximately 10pm, Tarence contacted the Aramark employee hotline and advised them of his sex and age discrimination associated with Aramark, and the sexual favoritism exhibited in the workplace, including the discriminatory pay practices as under the Equal Pay Act.

38. On November 6, 2013, at about 1:30 pm, he was terminated, and provided with a severance package for 20 weeks of wages, plus a waiver of all of his Title VII and other state and federal employment rights. Tarence refused to sign it.

39. Also when contesting his unemployment claim, Aramark alleged that Tarence was terminated for cause. Per the terms of the Aramark handbook, an employee who is terminated for cause cannot be offered a severance. His unemployment claim was eventually approved.

### Part V. Causes of Action
### Count I. Sex Discrimination As Under the DCHRA

40. Plaintiff re-alleges and incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

41. At all present times Defendant Aramark was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et seq* (DCHRA), of the District of Columbia Code.

42. At all pertinent times, Plaintiff Tarence Brown was a male employee of Aramark entitled to protection under the D.C. Human Rights Act.

43. The DCHRA prohibits discrimination in employment "for any reason other than individual merit" including without limitation "sex."

44. By treating Tarence Brown differently than similarly situated female employees including in this case Ms. Gloria Barnes, by writing him up, and overly scrutinizing his work assignments, while not doing the same for Ms. Barnes, Aramark treated him differently in his terms and conditions of employment in violation of the DCHRA.

45. Defendant's action gives rise to an inference of discrimination because Aramark knew or should have known of the sex discrimination that Plaintiff suffered. Defendant Aramark's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

46. Defendant Aramark's acts of sex discrimination caused the Plaintiff Tarance Brown to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

47. This intentional, reckless and/or willful discrimination on the part of Defendant constitutes a violation of Plaintiff's rights as under the DCHRA.

48. By reasons of Defendant Aramark's discrimination, the Plaintiff is entitled to all legal and equitable remedies available under the DCHRA.

### Count II: Age Discrimination as Under the DCHRA

49. Plaintiff re-alleges and incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

50. At all present times Defendant Aramark was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et seq* (DCHRA), of the District of Columbia Code.

51. At all pertinent times, Plaintiff was an Aramark employee aged 48 entitled to protection under the D.C. Human Rights Act.

52. The DCHRA prohibits discrimination in employment "for any reason other than individual merit" including without limitation "age."

53. By treating Tarence Brown differently than similarly situated younger employees including in this case Ms. Gloria Barnes, and her younger colleagues by writing him up, and overly scrutinizing his work assignments, while not doing the same for Ms. Barnes, Aramark treated him differently in his terms and conditions of employment in violation of the DCHRA.

54. Defendant's action gives rise to an inference of discrimination because Aramark knew or should have known of the age discrimination that Plaintiff suffered. Defendant Aramark's conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

55. Defendant Aramark's acts of age discrimination caused the Plaintiff Tarance Brown to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

56. This intentional, reckless and/or willful discrimination on the part of Defendant constitutes a violation of Plaintiff's rights as under the DCHRA.

57. By reasons of Defendant Aramark's discrimination, the Plaintiff is entitled to all legal and equitable remedies available under the DCHRA.

## Count III
## Source Of Income Or Wage Discrimination as Under the DCHRA

58. Plaintiff realleges and incorporates by reference all of the allegations set forth above, as though fully set forth herein.

59. At all present times Defendant Aramark was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et seq* (DCHRA), of the District of Columbia Code.

60. At all pertinent times, Plaintiff Tarence Brown was a male entitled to protection under the D.C. Human Rights Act.

61. The DCHRA prohibits discrimination in employment "for any reason other than individual merit" including without limitation "source of income."

62. Plaintiff as the Night Operations Manager was being paid at $40,000 per annum. His comparator Ms. Gloria Barnes, the Day Operations Manager was being paid $55,000 annually, as the Day Shift Supervisor, or $15,000 higher for performing the same and comparable work as the Plaintiff.

63. By paying Tarence Brown a lower wage because of his sex, male, while paying a female a higher wage, Defendant Aramark and/or its agents or its employees acting on its behalf discriminated against him on the basis of his sex by treating him differently from and less preferably then similarly situated female employees in violation of the DCHRA.

64. Defendant knew or should have known of the wage discrimination that Plaintiff suffered, when it hired Ms. Barnes at a higher wage than the Plaintiff for the same or equal work performed at the Verizon Center, in this case duties for a Day (Barnes)

and Night (Plaintiff) Operations Manager respectively, both of whom also reported to the same supervisor Mr. Donoso.

65. Defendant conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

66. Defendant Aramark's acts of wage discrimination caused the Plaintiff to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

67. This intentional, reckless and/or willful discrimination on the part of Defendant constitutes a violation of Plaintiff's rights under the DCHRA.

68. By reasons of Defendant's discrimination, Plaintiff Tarence Brown is entitled to all legal and equitable remedies available under the DCHRA.

## Count IV. Retaliation as Under the DCHRA

69. Plaintiff re-alleges and incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

70. At all pertinent times Defendant was an employer subject to the provisions of the D.C. Human Rights Act § 2-1401 *et.seq* of the District of Colombia Code.

71. At all pertinent times Plaintiff Tarence Brown was an employee entitled to protection under the DCHRA.

72. The DCHRA makes it an "unlawful discriminatory practice to coerce, threaten, retaliate against or interfere with any person in the exercise or enjoyment of , or on account of having exercised or enjoyed, or on account of having aided and encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter."

73. The Plaintiff engaged in protected activity and opposition to practices made unlawful under the DCHRA while employed by Defendant Aramark, when he complained about sex and age based discriminatory and pay practices at work, for duties performed and for his unequal pay of salary.

74. As a result of his protected activity and opposition to practices made unlawful under the DCHRA, Plaintiff was subjected to an adverse employment action, including, a write up, a performance improvement plan, and eventually termination.

75. A casual connection exists between Plaintiff's protected activity and the adverse employment actions taken by Defendant Aramark, which might dissuade a reasonable worker from making or supporting a charge of discrimination.

76. Defendant acts of retaliation caused the Plaintiff to suffer economic losses, mental and emotional distress, embarrassment, humiliation and indignity.

77. This intentional, reckless, and/or willful retaliation by the part of Defendant constitutes a violation of Plaintiff's statutory rights under the DCHRA.

78. By reason of Defendant retaliation, Plaintiff is entitled to all legal and equitable remedies under the DCHRA.

<u>Count V</u>
<u>Violation Of The Equal Pay Act. 29 U.S.C. § 206 (D)</u>

79. Plaintiff reincorporates by reference all the paragraphs and allegations above, as though fully set forth herein.

80. Plaintiff Tarence Brown is a male.

81. Plaintiff is an "employee" as the term is defined at 29 U.S.C § 203 (e)(2)(ii), and defendant Aramark is an employer as the term is defined at 29 U.S.C § 203 (d).

82. Plaintiff's known comparators include Ms. Gloria Barnes who worked in the same facility and reported to the same supervisor/manager as the Plaintiff Tarence Brown.

83. Plaintiff as a "Night Operations Manager" performed work in a position that required "equal skill, work and responsibility under similar working conditions" of his female comparator Ms. Gloria Barnes. *See Smith v. Janey*, 664 F. Supp. 2d 1, 12 (D.D.C. 2009

84. Plaintiff as the Night Operations Manager was being paid at $40,000 per annum. Ms. Barnes upon being hired as the Day Operations Manager and was being paid $55,000 per annum, or $15,000 higher than the male plaintiff Tarence Brown.

85. Plaintiff was paid less than Ms. Gloria Barnes for performing similar or equal work, under similar working conditions, in this case: both of them worked at the Verizon Center and reported to the supervisor Mr. Denoso, as the Day (Ms. Barnes) and Night Operations Managers (Plaintiff) respectively.

86. By paying the Plaintiff a lower wage because of his sex, male, while paying a female a higher wage, Defendant Aramark and/or its agents or its employees acting on its behalf discriminated against the Plaintiff on the basis of his sex by treating him differently from and less preferably then similarly situated Ms. Gloria Barnes in violation of the Equal Pay Act.

87. Defendant Aramark knew or should have known of the wage discrimination that Plaintiff suffered, when it hired Ms. Barnes at a higher wage than the Plaintiff for the same work performed.

88. Defendant conduct has been intentional, deliberate, willful and in callous disregard of Plaintiff's rights.

89. As the direct and proximate result of Defendant's violation of 29 U.S.C § 206 (d), Plaintiff was caused to suffer damages.

90. Furthermore Defendant's actions were reckless, and willful.

91. For violations of 29 U.S.C § 206 (d), Plaintiff demands such legal and equitable relief as under 29 U.S.C § 216 (b) including but not limited to: employment, reinstatement, economic damages of back pay and front pay, liquated damages, reasonable attorneys fees, and any other relief as this Court sees fit.

## Count VI. Retaliation as Under the Equal Pay Act

92. Plaintiff realleges and reincorporates all the allegations above as though fully set forth herein.

93. The EPA prohibits retaliation. *See Farzam v. Isaacson*, 905 F. Supp. 2d 95, 98 (D.D.C. 2012)

94. Plaintiff is an "employee" as the term is defined at 29 U.S.C § 203 (e)(2)(ii), and defendant Aramark is an employer as the term is defined at 29 U.S.C § 203 (d).

95. Plaintiff's known comparators include Ms. Gloria Barnes who worked in the same facility and reported to the same supervisor/manager as the Plaintiff Tarence Brown.

96. Plaintiff as a "Night Operations Manager" performed work in a position that required "equal skill, work and responsibility under similar working conditions" of his female comparator Ms. Gloria Barnes. *See Smith v. Janey*, 664 F. Supp. 2d 1, 12 (D.D.C. 2009

97. Plaintiff engaged in protected activity when he complained to his manager about the unequal pay practices at work. Soonafter he was ignored by his managers, was not provided with adequate staff and was not timely told of his assignments and job

responsibilities. He again engaged in protected activity when he called the Aramark

hotline and complained about discriminatory pay practices on November 5, 2013,

barely 24 hours later or November 6, 2013, he was terminated. Any or all of these

acts would dissuade an employee from filing, making or supporting a charge of

discrimination as under the EPA, and the standards articulated in *Burlington N. &*

*Santa Fe Railway Company v White*, 548 U.S. 53 (2006).

### Count VII. Hostile Work Environment as Under the DCHRA

98. Plaintiff realleges and reincorporates all the allegations above as though fully set forth

herein.

99. At all pertinent times Defendant was an employer subject to the provisions of the

D.C. Human Rights Act § 2-1401 *et.seq* of the District of Colombia Code.

100.    At all pertinent times, the Plaintiff was an employee entitled to protection under

the DCHRA.

101.    Defendant created a hostile work environment and/or harassed Plaintiff because

of his sex and age, the offending conduct was unwelcome, was based on his sex and

age, was sufficiently server or pervasive when it altered the conditions of his

employment and created an abusive work environment and was imputable to his

employer Aramark.

102.    The affirmative defense of *Faragher*[4] and *Ellerth*[5] allows an employer to avoid

strict liability for a supervisor's harassment of an employee if no tangible employment

action was taken against the employee. Examples of tangible employment action

---

[4] *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)

[5] *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742 (1998)

include "discharge, demotion, or undesirable reassignment." *Matvia v. Bald Head Island Mgmt.*, 259 F.3d 261, 266 (4th Cir.2001)

103.    Plaintiff here suffered tangible employment actions from his supervisor and General Manager and other management employees, including the Director of HR, when he was unable to perform his job because of the harassment, was written up for a PIP, and was subsequently terminated on November 6, 2013. As a result, "vicarious liability is absolute." *Mikels v. City of Durhum*, 183 F.3d. 323, 332 (4th Cir. 1999).

104.    As a direct and proximate result of this injury from the Defendant, Plaintiff has suffered and is suffering considerable injury, including but not limited to loss of substantial past and future salary and income, benefits and other privileges and entitlements of employment, loss of professional status and career enhancing and advancement opportunities and loss of retirement savings and benefits. The Plaintiff has also suffered from emotional distress arising from the loss of his job, the damage to his professional reputation and the embarrassment, humiliation, and indignity arising from the discriminatory conduct of Defendant and/or agents or employees acting on its behalf, and the stress and anxiety caused by his wrongful termination and resultant financial hardship.

105.    As a consequence of Defendant's action, it is additionally liable for attorney's fees and other costs and interest in pursuit of this litigation.

## Part VI. Prayer For Relief

**WHEREFORE,** Plaintiff Tarence Brown prays as follows:

    a.    That this Court enter judgment against the Defendant Aramark;

b.  That the Court award Plaintiff damages in the amount equal to all of his

accumulated lost wages and benefits, including back pay, front pay and

benefits, punitive damages, and compensatory and emotional damages for the

financial and emotional harm caused by Defendant Aramark, including pre-

judgment and post judgment interest and any other damages permitted in an

amount no less than eight hundred thousand dollars ($800,000.00).

c.  That the Court also award Plaintiff payment of all fees, costs and expenses

inclusive of attorney's fees and expert fees.

## VII.   <u>JURY DEMAND</u>

Plaintiff hereby requests a trial by jury.

Respectfully Submitted,

/s/Arinderjit Dhali, Esq.
D.C. Bar No. 495909
Dhali PLLC
1629 K. Street, NW. Suite 300.
Washington D.C. 20006
Telephone: (202) 556-1285
Facsimile: (202) 351-0518
ajdhali@dhalilaw.com
*Attorney for Plaintiff Tarence Brown*
Tuesday, November 4, 2014

## <u>Certificate of Service</u>

The undersigned hereby certifies under oath that he caused to be served and delivered the
foregoing Initial Order, Summons & Complaint, via U.S. certified mail, return receipt
requested on 11/4/2014 to:

Stephen Reynolds, General Counsel
Aramark Headquarters Office
1101 Market St
Philadelphia, PA 19107

/s/A.J Dhali, Esq.